**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DOYLE DAHL**                                                                              **PLAINTIFF**

**VS.**                                         **CIVIL ACTION NO.: 1:09-CV-765-LG-RHW**

**OFFICER JEFFREY GUILLOT,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY, POLICE CHIEF JAMES A.
VARNELL, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY, JOHN THOMAS
LONGO, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY, AND UNKNOWN
JOHN AND JANE DOES A-Z**                                                       **DEFENDANTS**

---

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

The Defendants, the City of Waveland, Mississippi, Officer Jeffrey Guillot, Police Chief James A. Varnell and John Thomas Longo, (hereinafter, the "Municipal Defendants") submit this Memorandum in Support of their Motion for Summary Judgment.

### INTRODUCTION

While being booked at the Waveland Police Department following a drunk driving arrest, Plaintiff Doyle Dahl—apparently still intoxicated—began behaving in an erratic and belligerent manner. He began shouting and swearing at Officer Jeffrey Guillot, who was trying to prepare a breathalyzer test. He began kicking Guillot's desk and ignored repeated instructions to calm down and be seated. After several warnings, Guillot deployed his taser device upon Dahl. This did not gain compliance, so Guillot attempted to apply the device again. Dahl tried to dodge the taser, and was accidentally struck in the head. Per policy, Guillot called an ambulance and Dahl was taken to Hancock Medical Center for treatment of a small cut on his forehead. He was later convicted of DUI and disorderly conduct, among other things.

Dahl's version of events is radically different and rather incredible. He claims that he was well-behaved and complied with all instructions, but Officer Guillot simply decided to gratuitously tase him in the chest ten times. He says that Officer Guillot announced, "I'm going to make you piss in your pants," then proceeded to grab Dahl's crotch. Dahl's account is undercut by objective facts.  For instance, Dahl alleges that his sister-in-law Tammy Holland was at the police station, witnessed the altercation, and would corroborate his version. Holland testified that she was never there and saw nothing. Dahl further alleges that some abrasions on his chest were made by a taser, but the T-shirt he was wearing that night shows no damage whatsoever to the chest area.

For purposes of summary judgment, the Court must assume that Dahl's version of events is true, however dubious it may appear. Even so, his claims uniformly fail as a matter of law. For instance, his Fourteenth Amendment due process claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, as he was convicted of disorderly conduct and cannot collaterally attack the factual findings underlying that conviction. His claims against the City of Waveland and individuals named in their official capacities fail because he cannot show that any municipal policy or custom caused his alleged injury. His state law claims are barred by the police immunity provision of the Mississippi Tort Claims Act.

For these and other reasons discussed below, Dahl's claims should be dismissed via summary judgment.

## FACTUAL BACKGROUND

### I.    Plaintiff's Initial Arrest

At around two in the morning on March 31, 2008, Officer Jeffrey Guillot of the Waveland Police Department observed Plaintiff Doyle Dahl driving erratically on Highway 90 in Waveland, Mississippi.  Dahl admits that he had "eight or ten" beers earlier that day, and that he

had continued drinking late into the evening. *See* Deposition of Doyle Dahl at 101, 107 (Motion Exhibit 1). He says he cannot recall whether he was swerving between lanes when he was stopped by Officer Guillot. *See id.* at 110-11.

Dahl was driving a Silver Lexus that belonged to his sister-in-law, Tammy Holland, who was the sole passenger in the vehicle. *See id.* at 91-92. Holland worked as a bartender at Bubba's Lounge. *See id.* at 93. At the request of his ex-wife, Dahl was driving Holland home from her shift because she had become intoxicated while on duty. *See id.* at 94-95. Holland testified that "once every couple of months," she would drive herself home despite having drinks at work. *See* Deposition of Tammy Holland at 9-10 (Motion Exhibit 2). On this particular night, however, she needed Dahl to drive her. *See id.* at 9-11.

Shortly after leaving Bubba's Lounge, Dahl was pulled over by Officer Guillot, who saw his erratic driving. *See* Dahl Depo. at 112. Officer Edward Besse was called as a precaution, as Guillot noticed there were two individuals in the Lexus. *See* Deposition of Jeffrey Guillot at 19 (Motion Exhibit 3). Dahl declined to perform a field sobriety test, but agreed to take a portable breath test and was found to be over the legal limit. *See* Narrative Form (Motion Exhibit 4). He was placed into Officer Guillot's patrol car. *See id.* Dahl was initially compliant. Soon, however, Holland refused to comply with officers' commands to exit the vehicle and began yelling and cursing at them. Officer Guillot deployed his taser upon her, causing Dahl to begin yelling and swearing at the officers, as well. *See id.*

## II. Diverging Accounts Of The Physical Altercation

Officer Guillot transported Dahl to the Waveland Police Department to book him and perform a breathalyzer test. *See id.*; *see also* Guillot Depo. at 15-16. Dahl's version of events at the police station runs as follows. He claims that he was standing in front of a desk when Guillot struck him in the head for no apparent reason. *See* Dahl Depo. at 138. He says he was knocked

into a chair, at which point Guillot began swearing at him and repeatedly tasing him. *See id.* at 139. Dahl says that Guillot directly applied the prongs of the taser to his chest, using a so-called "drive stun" technique. *See id.* He claims that Guillot said, "I'm going to make you piss in your pants," and grabbed Dahl's crotch. *See id.* at 140-41. Dahl claims that he was drive-stunned a total of ten times. *Id.* at 142. He testified that he never failed to comply with any instructions from any police officer. *Id.* at 146.

For comparison purposes, Officer Guillot testified that Dahl became belligerent while awaiting a breathalyzer test at the police station. He was kicking the desk, yelling, swearing, and refusing to comply with Guillot's commands to stop. *See* Dahl Depo. at 18. Guillot testified that he used his taser twice on Dahl. *See* Guillot Depo. at 12-13. First, he applied a drive stun technique to Dahl's upper left side. *See id.* When this failed to gain compliance, Guillot attempted to used the drive stun technique for a second time. *See id.* Dahl moved, causing the taser prong to strike him in the forehead, causing a small laceration. *See id.* At this point, Guillot brought wet paper towels for the cut on Dahl's forehead. *See id.* at 16.

There is abundant evidence that Dahl's version of events is false. To cite one example, Dahl claims that Tammy Holland witnessed the tasing incident at the Waveland police station. *See* Dahl Depo. at 147-48. This is false. Holland testified that she does not recall being at the Waveland police station that night or seeing the altercation. *See* Holland Depo. at 29-30. In fact, she was taken directly to the Hancock County Jail. *See* Holland Depo. at 28; Holland Custody Form (Motion Exhibit 5). Of course, however dubious Dahl's account may be, the Court must assume it is true for purposes of summary judgment.

## III.   Dahl's Incarceration And Conviction

Guillot immediately provided first aid, applying a bandage to Dahl's head. This stopped what little bleeding there was. As a precaution and pursuant to department policy, Guillot called

an ambulance, which transported Dahl to an emergency room.  *See* Narrative Form (Motion Exhibit 4).  Dahl was examined by a doctor and discharged.  Shortly thereafter, he was booked into the Hancock County Jail. Dahl Custody Form (Motion Exhibit 6). Dahl was found guilty in Waveland Municipal Court of DUI, careless driving, failure to provide proof of insurance, and disorderly conduct.  *See* Municipal Court Orders (Motion Exhibit 7).

Dahl appealed the disorderly conduct charge to the Hancock County Circuit Court. However, because Officer Guillot left the police department for a brief period to pursue professional education, the city prosecutor opted to pass the appeal to the inactive file. *See* Order Passing To Inactive Files (May 6, 2009) (Motion Exhibit 8). Although his conviction was not vacated or expunged, the municipal court judgment imposing fines was stayed. Dahl elected not to pursue his appeal any further.

## STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).  To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial."  *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 214 (5th Cir. 2006).  A factual issue is "material" only if its resolution could affect the outcome of the action.  *See, e.g., Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  A plaintiff cannot resist summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

PD.5349896.1

## ARGUMENT AND AUTHORITIES

### I.    Plaintiff Has No Fifth Or Eighth Amendment Claim.

As a preliminary matter, Dahl's Fifth and Eighth Amendment claims fail as a matter of law.  *See* Amended Compl. ¶¶ 1, 24.  It is well-settled that the due process and other protections of the Fifth Amendment apply only to the federal government, and do not provide a cause of action against state or local officials. *See, e.g.,  Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Consequently, Dahl's Fifth Amendment claim against the Municipal Defendants should be dismissed.

Likewise, the Fifth Circuit consistently has held that the protections of the Eighth Amendment apply only to convicted inmates, not suspects or pretrial detainees. *See, e.g., Hare v. City of Corinth*, *Miss*., 74 F.3d 633, 639 (5th Cir. 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Dahl does not allege that he had even been booked or placed into a jail cell, much less convicted. Consequently, he has no claim under the Eighth Amendment. *See, e.g., Abshure v. Prator*, 392 Fed. Appx. 267, 268 (5th Cir. 2010) (The "Eighth Amendment applies to treatment of prisoners, not pretrial detainees.")(copy attached).

### II.    Plaintiff's Due Process Claim Is Barred By *Heck v. Humphrey*.

The crux of Dahl's lawsuit is his allegation that Guillot's use of force violated the due process provisions of the Fourteenth Amendment. *See* Amended Compl. ¶¶ 1, 24. This claim is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In brief, Dahl was convicted of disorderly conduct. The factual allegations underlying his due process claim contradict the factual findings underlying his conviction.  Consequently, his claim is barred.

### A.    Dahl's factual account is incompatible with his criminal conviction.

*Heck* bars Section 1983 claims where the plaintiff challenges police actions whose purported unlawfulness would have invalidated a prior conviction.  512 U.S. at 486-87; *see also*

PD.5349896.1

*Connors v. Graves*, 538 F.3d 373, 377-78 (5th Cir. 2008).  Put simply, a suspect may not wait until after he is convicted of a crime to collaterally attack police conduct in response to that crime. *See* Heck, 512 U.S. at 486 ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."). To be clear, the question is whether the prior conviction conflicts with the plaintiff's *actual version of events*, as reflected in his complaint and deposition testimony, not whether the prior conviction and civil claim could conceivably be compatible under some hypothetical scenario.[1]

To prevail on his due process claim, Dahl must show that Guillot's actions did not constitute a "good faith effort to maintain or restore discipline," but rather were undertaken "maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993).  In an attempt to meet this high standard, Dahl testified that he fully complied with Guillot's instructions and at all times behaved in an orderly fashion, but was gratuitously attacked by Guillot. *See* Dahl Depo. at 141, 146-51. His version of events squarely contradicts the factual showing required for his disorderly conduct conviction, and is thus barred by *Heck*.

Dahl was convicted of disorderly conduct in violation of Miss. Code Ann. 97-35-7 for his behavior while being processed by Officer Guillot at the Waveland police station. *See* Order of Judge Gerald Gex (November 13, 2008) (Motion Exhibit 7); Dahl Custody Form (Motion Exhibit 6); Dahl Depo. at 150-51. Section 97-35-7 applies where a criminal defendant "refuses to promptly comply with or obey a request, command, or order of a law enforcement officer," with

---

[1] *See, e.g., Stephens v. Scott*, 244 Fed. Appx. 603, 605 (5th Cir. 2007); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999) ("Accepting [plaintiff's] version of events," as set forth in deposition testimony, "his claim is necessarily inconsistent with his criminal conviction.") (copies attached); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (plaintiff may "voluntarily steered" his claim "into Heck territory by making specific factual allegations" that conflict with prior conviction).

either the intent or effect of causing a breach of the peace. *See* Miss. Code Ann. § 97-35-7. Further, the officer must have legal authority to make the request or command in question. *See id.*, *see also Qualls v. State*, 947 So.2d 365, 372 (Miss. Ct. App. 2007).

Dahl's version of events in this lawsuit cannot be squared with his conviction under Section 97-35-7 because Dahl flatly denies failing to comply with police orders. When asked point blank in his deposition whether he ever refused to comply with Officer Guillot's instructions at the Waveland police station, Dahl replied, "No, I did not." *See* Dahl Depo. at 146. By claiming he was gratuitously attacked despite fully complying with Guillot's instructions, Dahl has voluntarily steered this lawsuit into a direct factual conflict with his prior criminal conviction, which required a showing that Dahl failed to comply with police instructions. Consequently, *Heck* bars any recovery on Dahl's Fourteenth Amendment claim or any other federal claim.

### B. Dahl cannot establish that his conviction was reversed.

A Section 1983 plaintiff may avoid dismissal under *Heck* only by showing that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *See Heck*, 512 U.S. at 486-87. The plaintiff bears the burden of "prov[ing] that the conviction or sentence has been overturned." *Id.*, *see also Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995)

Dahl has not met this burden. Although he noticed an appeal to the Hancock County Circuit Court, that appeal was passed to the court's inactive file and never pursued. *See* Order Passing to Inactive File (Motion Exhibit 8). Dahl likely will note that the request to "pass to file" came from the city prosecutor, not from him. This is irrelevant to the *Heck* inquiry. While an appeal to the circuit court serves to stay the judgment of a municipal court, it has long been

established that the mere act of appealing does not vacate the conviction. *See, e.g., Ex parte Caldwell*, 62 Miss. 774 (Miss. 1885); *see also* Miss. Code Ann. 99-35-1.  Had Dahl wished to pursue his appeal and vacate his conviction here, he was free to do so, as it remained on file with the circuit court.  He never did so, and thus did not meet his burden under *Heck*.

### III.    Dahl Cannot Establish The Requisite Municipal Policy Or Custom.

Even if Dahl's federal claims were not barred, his claims against the City of Waveland and the officers named in their official capacities fail for an additional reason. Dahl has no evidence that the alleged conduct by Officer Guillot was the product of a municipal policy or custom.

There is no respondeat superior liability under Section 1983.  *See, e.g., Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Consequently, a municipality cannot be held liable unless the alleged constitutional violation by a police officer proximately resulted from a municipal policy or custom. *See, e.g., Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). For purposes of Section 1983, a claim against a municipal employee in his official capacity is "in essence, a suit against the municipality," and requires the same showing of a policy or custom. *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008), citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

Thus, to prevail on claims against the City of Waveland or the individual defendants in their official capacities, Dahl must show his alleged injury was caused by (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers," or (2) "a persistent widespread practice of city officials or employees, which … is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), cert denied, 472 U.S. 1016 (1985).

The Fifth Circuit has made plain that municipal liability requires a policy that affirmatively and proximately causes the challenged act, not the mere lack of some hypothetical policy to prevent it. *See, e.g., Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). In this case, there is no formal municipal policy mandating or authorizing the use of excessive force against detainees. Thus, Dahl's only option is to show a widespread and well-settled custom of using unnecessary force against detainees.

Under Fifth Circuit law, an act by a municipal employee rises to the level of a "custom" only if it "results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009), quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Dahl cannot meet this standard for two independent reasons.

First, Dahl has not identified any instance prior to his March 2008 arrest in which a pretrial detainee was subjected to excessive force by a Waveland police officer.. Second, Dahl has no evidence that the Board of Aldermen—which is the City's "final policymaking authority"—ever authorized or acquiesced to any use of excessive force like that alleged here. When asked for factual support for his belief that the board (or the mayor or police chief) authorized Guillot's purported actions, Dahl had no answer. He could point only to his bare belief that certain other Waveland officers had behaved in some generally improper manner at some point in the past.  *See* Dahl Depo. at 194-98.

When asked whether the Board of Aldermen (or mayor or police chief) ever instructed anyone on how to apply tasers to suspects, Dahl admitted that he did not know.  *See id*. at 203. When asked point blank whether he knew anything about the City of Waveland's policies or historical practices concerning the use of tasers, Dahl said no. *See id*. at 203.  Lest there be any doubt, Dahl was asked whether it was fair to say that his allegations against the City were based

on "your own inferences about what you think must happen internally" in the City, rather than

observed facts. *Id*. at 197.  He responded, "Yeah, you can say that." *Id.*

Under settled law, a plaintiff's unsupported belief that a municipal policy or custom

exists is insufficient to support municipal liability under Section 1983. *See Brown v. City of*

*Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). For this additional reason, Dahl's federal

claims against the City of Waveland and the named individuals in their official capacities fail as

a matter of law.

**IV.   Plaintiff's Claims Against James Varnell And John Longo Are Barred By Qualified Immunity.**

Dahl's federal claims against Police Chief James Varnell and Mayor John Longo, in their

individual capacities, are further barred by the doctrine of qualified immunity. Put simply,

neither Varnell nor Longo had anything to do with the altercation between Dahl and Guillot in

March 2008.

Qualified immunity protects "all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It reflects federal courts'

understanding that "reasonable mistakes can be made as to the legal constraints on particular

police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). To overcome the immunity defense,

a plaintiff must "show the [official's] conduct violated a constitutional right," Saucier v. Katz,

533 U.S. 194, 201 (2001). If that threshold is met, he must show that the right violated was

"clearly established" by existing law at the time of the incident. *See Brosseau v. Haugen*, 543

U.S. 194 (2004). Once invoked, "the burden is on the plaintiff to demonstrate the inapplicability

of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).

Dahl's claims against Varnell and Longo fail at the first step of the qualified immunity

analysis because they did not violate any federal right.  Dahl does not allege that either Varnell

or Longo was involved in the physical altercation. As noted above, he lacks any evidence that

11

either man authorized or approved any alleged use of excessive force. In short, there is no evidence Varnell or Longo violated any federally-protected right. The federal claims against them in their individual capacities are thus barred by qualified immunity.

## V.      Dahl's Failure To Train Theory Is Meritless.

Dahl makes the conclusory assertion that the City of Waveland failed to properly train and supervise its officers. *See* Amended Compl. ¶¶ 40-43.  Although listed as a separate claim in this lawsuit, "failure to train" arguments are really just a fall-back municipal liability theory for plaintiffs like Dahl who cannot establish the requisite policy or practice via other means. As is usually the case, the argument fails for two reasons. First, there is no evidence of any deliberate failure to train officers. Second, the officer in question completed the minimum training requirements mandated by the State of Mississippi, thus foreclosing liability as a matter of law.

To be clear, relying on a failure to train theory does not change the essential burden of a Section 1983 plaintiff who seeks to establish municipal liability.  Dahl still must show that a municipal policy or custom proximately caused his injury. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). More specifically, he must (1) show that the municipal policymaker was deliberately indifferent to a known threat; and (2) show with particularity how the alleged training program is defective. Dahl fails both requirements.

### A.       Dahl cannot establish deliberate indifference to a known threat.

The Fifth Circuit has explained that "[d]eliberate indifference is a high standard" and that "a showing of simple negligence or even heightened negligence will not suffice."  *Valle v. City of Houston*, 613 F.3d 536, 543 (5th Cir. 2010).  Instead, a plaintiff must show the municipal policymaker disregarded "a known and obvious consequence" of inaction. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).  "Usually a plaintiff must show a pattern of similar

violations" prior to the complained-of incident.  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

The City of Waveland was not indifferent to any known threat.  Dahl has not pointed to any instance in which the city has been found liable for the improper use of force against a detainee. More to the point, when asked whether he knew of any instance prior to his March 31, 2008 arrest in which Waveland was found to have violated the law in its use of tasers, Dahl responded "No."  *See* Dahl Depo. at 197.  Dahl likely will point to various recent lawsuits filed against the city, which concern the use of tasers. The vast majority were filed by Dahl's lawyer in this case.  They are currently pending and appear meritless.  The undisputed and controlling fact, however, is that these lawsuits were not even filed—much less adjudicated—prior to Dahl's arrest in March 2008.  They cannot have put the Board of Aldermen on notice of any alleged problems prior to the events here, and thus, cannot establish deliberate indifference.

> **B.    Dahl cannot identify any specific constitutional defect in Waveland's training of police officers.**

Even if the deliberate indifference standard were met, Dahl still would have to show "with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). As a matter of law, a Section 1983 plaintiff may not simply point to an alleged constitutional violation and infer without actual evidence that it results from a failure to train or supervise. *See Zarnow*, 614 F.3d at 169. Unfortunately for Dahl, this is precisely the strategy he relies upon.

Dahl does not even ***allege*** facts showing any particular defect in training or supervision, much less proffer competent summary judgment evidence. Indeed, his entire claim is fact-free boilerplate that would not survive a motion to dismiss under Rule 12(b)(6), much less summary judgment under Rule 56. *See generally Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1941 (2009) ("threadbare recitals" and "conclusory statements" insufficient to avoid Rule 12(b)(6) dismissal);

compare Amended Compl. ¶¶ 40-43. There is absolutely nothing in the record addressing officers' training at all—aside from Officer Guillot's confirmation that he was trained in the use of a taser—much less showing any constitutional deficiency.

Lest there be any doubt, during his deposition, Plaintiff was asked point blank about his "failure to train" theory:

> Q:    This claim is called failure to adequately train and
>       supervise police officers.  Tell me what you know about
>       how they're trained.
>
> A:    Poorly if they treat people the way they do.
>
> Q:    I understand that's how your characterization is.  But what
>       facts do you know about what training they receive?
>
> A:    I don't have any.  I'm not a police officer.
>
> Q:    So you don't know what training they receive, right?
>
> A:    No.

Dahl Depo. at 194-95. When asked what factual support he had for his "failure to supervise" theory, Dahl admitted he knew nothing about the actual supervision from Chief Varnell or the Board of Aldermen, but instead based his claim on his "own inferences" about what he thinks must happen in the Waveland Police Department.  *See id.* at 197.

Dahl's fact-free speculation about the training and supervision practices of the Waveland Police Department is patently insufficient to resist summary judgment. *See, e.g., Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence"). He has failed to identify any particular constitutional defect, instead relying on his own baseless speculation that any alleged violation by an officer must stem from official city policy.  For this additional reason, his municipal liability argument fails.

14

**C.**     **Dahl's failure to train claim theory fails because Officer Guillot completed the minimum training mandated by state law.**

Dahl's failure to train argument fails for one additional reason. Under Fifth Circuit law, completion of the minimum training mandated by state law precludes a finding of municipal liability under a Section 1983 "failure to train" theory. *See, e.g., Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); *O'Neal v. City of San Antonio*, 344 Fed. Appx. 885, 888 (5th Cir. 2009) (copy attached). It is undisputed that Officer Guillot attended the police academy, received the state mandated law enforcement training, graduated, and was certified under Mississippi law as law enforcement officers. *See* Law Enforcement Certification of Officer Jeffrey Guillot (Motion Exhibit 9). Dahl has proffered no evidence that Mississippi's training standards are inadequate, nor could he. For this additional reason, his failure to train theory fails

**VI.     Dahl's Negligent Hiring And Retention Claim Is Meritless.**

Dahl's complaint contains one last federal claim, entitled "Negligent Hiring, Retention, and Failure to Discipline or Take Necessary Corrective Action." *See* Amended Compl. ¶¶ 44-46. Like most of the complaint, this claim consists almost entirely of fact-free boilerplate language. It appears to be one more attempt to re-package Dahl's meritless municipal liability theories, which are addressed above in Parts III and IV. It can be dispensed with quickly.

Section 1983 is the statutory vehicle by which federal constitutional and statutory claims against government entities must be brought. The Supreme Court and the Fifth Circuit both have consistently held that Section 1983 provides no redress for negligence. *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Even evidence of gross negligence cannot support a Section 1983 claim. *See, e.g., Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc). Dahl's attempt to raise a negligence claim under Section 1983 thus fails as a matter of settled law.

15

## VII.   Plaintiff's Federal Conspiracy Claims Fail For Lack Of Any Race-Based Conspiracy.

Dahl's federal conspiracy claims under 42 U.S.C. §§ 1985 and 1986 also can be dispensed with quickly, as there is no allegation of class-based racial animus here..

It is well-settled that Section 1985 creates a cause of action only for conspiracies based on racial animus. *See, e.g., Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010), citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994). It is equally well-settled that the alleged conspiracy must be to deny the rights of a class of people, not just one particular person. *See, e.g., Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994).  Here, plaintiff—who like Guillot and Chief Varnell is white—admits there is no basis to believe the City of Waveland took any action against him because of his race. *See* Dahl Depo. at 193. He further admits that any alleged conspiracy was against him individually, not any class of people.  *Id.* at 194.

In short, Dahl's Section 1985 claim fails as a matter of law.  The Fifth Circuit has made it clear that, where a plaintiff "fail[s] to demonstrate a claim under § 1985, by definition [he] cannot sustain a claim under § 1986." *Lockett*, 607 F.3d at 1002, citing *Galloway v. State of La.*, 817 F.2d 1154, 1159 n. 2 (5th Cir. 1987).  Dahl's Section 1986 claim should therefore be dismissed as well.

## VIII.   Plaintiff's State Law Claims Are Barred By The Mississippi Tort Claims Act.

Most of Dahl's state law claims are barred by the immunity provisions of the Mississippi Tort Claims Act (MTCA).  The MTCA expressly bars liability of governmental entities or their employees "[a]rising out of any act or omission … relating to police … protection."  Miss. Code Ann. § 11-46-9(1)(c). The sole exception occurs where police action was taken "in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *Id.* Thus, to overcome immunity under the MTCA's police immunity clause, a plaintiff must prove "by a preponderance of evidence that [he] was not engaged in criminal

16

activity at the time of injury." *Phillips v. Mississippi Dept. of Public Safety*, 978 So. 2d 656, 661 (Miss. 2008).

Dahl's criminal conviction precludes such a showing as a matter of law. Where the alleged violation by municipal officials "has some causal nexus" to the plaintiff's criminal act, the MTCA bars liability. *Estate of Williams ex rel. Williams v. City of Jackson*, 844 So.2d 1161, 1165 (Miss. 2003), *see also Bridges v. Pearl River Valley Water Supply Dist.*, 793 So.2d 584, 587-88 (Miss. 2001). Here, there can be no serious dispute that Dahl's conviction under Miss. Code Ann. § 97-35-7 for failure to comply with Guillot's commands shares a causal nexus with his state law claims of assault, battery, and negligent and intentional infliction of emotional distress. Consequently, these claims are barred by the MTCA's police immunity provision.

## IX.   Plaintiff's Remaining State Law Claims Are Meritless.

Dahl also has pled state law claims of civil conspiracy, false arrest, false imprisonment, malicious prosecution, and "the common law tort of outrage." *See* Amended Compl. ¶¶ 53-58, 62-67. To the extent these claims arise out of the March 31, 2008 altercation at the Waveland police department, they are barred by the police immunity provision of the MTCA because Dahl was engaged in a criminal act when any injury occurred. To the extent they do not, they fail on their merits.

### A.   Civil Conspiracy

Dahl's civil conspiracy claim fails because there is no evidence that anyone conspired against him. To state a claim of civil conspiracy under Mississippi law, a plaintiff must establish that two or more people agreed to commit an overt unlawful act, and that he was damaged as a result. *See, e.g., Gallagher Bassett Servs. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004). Dahl has no facts to support such a claim.

When asked who conspired against him, Dahl's only response was "the City of Waveland." *See* Dahl Depo. at 191-192.  When asked what individuals within the city he was referring to, he identified Jeff Guillot.  *See id*.  When asked who the second conspirator was, he said he simply assumed "the whole shooting shebang" of city officials must have been in on it. *See id*. Dahl then speculated that perhaps Officer Israel Neff was involved in some conspiracy, but admitted not knowing of any conversation or correspondence in which Guillot, Neff, or anyone else conspired to harm him. *See id*. at 192-93.

In short, Dahl's civil conspiracy claim is boilerplate language, included in the complaint as a matter of course. There are no facts suggesting that the altercation with Officer Guillot was the product of any conspiracy, and this claim should be dismissed.

### B.       False Arrest, False Imprisonment, And Malicious Prosecution

Dahl's false arrest, false imprisonment and malicious prosecution claims fail because his arrest and detention were entirely lawful. Under settled law, a false arrest claim fails where the officer had probable cause to make the initial arrest.  *See Mayweather v. Isle of Capri Casino, Inc.*, 996 So. 2d 136, 141 (Miss. Ct. App. 2008), citing *Mound Bayou v. Johnson,* 562 So.2d 1212, 1218 (Miss. 1990). Likewise, a false imprisonment claim fails where the imprisonment was lawful. *See id.* at 140, citing Whitten v. Cox, 799 So.2d 1, 9 (Miss. 2000). A malicious prosecution claim fails unless the plaintiff can show both (1) a lack of probable cause; and (2) an acquittal or other favorable termination of the proceedings.  *See Perkins v. Wal-Mart Stores, Inc.*, 46 So.3d 839, 844 (Miss. Ct. App. 2010).

Dahl was arrested and subsequently jailed for his conduct while driving, not his altercation with Guillot. He was later found guilty of careless driving, failure to provide proof of insurance, and DUI.  *See* Municipal Court Order (September 11, 2008) (Motion Exhibit 7).  In

addition, Dahl admitted that he had been drinking prior to driving Holland's car, and that he cannot recall whether he swerved between lanes.  *See* Dahl Depo. at 101, 107, 110-11.

In short, Officer Guillot indisputably had probable cause to arrest Dahl and place him in the custody of the Hancock County Jail.  Likewise, the Waveland city prosecutor—who is not a defendant in this case—indisputably had probable cause to prosecute Dahl.  His claims of false arrest, false imprisonment, and malicious prosecution thus fail as a matter of law.

### C.      The "Tort of Outrage"

Finally, it does not appear that any Mississippi court has ever recognized a so-called "tort of outrage."  *Cf.* Amended Compl. ¶¶ 56-58.  The term appears only twice in the entire reported history of Mississippi case law, both times in dicta. While alleging "outrageous" conduct may permit recovery where other elements are present, such as in cases of infliction of emotional distress, it has never been recognized as a cause of action unto itself in Mississippi.  Assuming such a cause of action exists, the only conduct that Dahl alleges that even arguably approaches a standard of "outrageousness" was the physical altercation with Guillot. As shown above, all claims stemming from that altercation are barred by the police immunity provisions of the MTCA.

### CONCLUSION

For the foregoing reasons, the Municipal Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, with all costs taxed to the Plaintiff.

19

THIS the 12th day of August, 2011.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

**OF COUNSEL:**

BY:   */s/W. Brett Harvey*
_____

Zach Butterworth (MSB # 9946)                 Gary E. Friedman, MB #5532
Gary Yarborough, Jr. (MSB # 102310)           W. Brett Harvey, MB # 102440
HESSE & BUTTERWORTH, PLLC                      111 East Capitol Street • Suite 600
841 Highway 90                                Jackson, Mississippi  39201-2122
Bay St. Louis, MS 39520                       P. O. Box 23066
Telephone: (228) 466-0020                     Jackson, Mississippi 39225-3066
Facsimile: (228) 466-0550                     Telephone: (601) 352-2300
zbutterworthlaw@bellsouth.net                 Telecopier: (601) 360-9777
garyyarborough@bellsouth.net                  Email: friedmag@phelps.com
                                                     brett.harvey@phelps.com

                                              Michael Held, MB #101942
                                              NorthCourt One
                                              2304 – 19th Street, Suite 300
                                              Gulfport, Mississippi 39501
                                              Telephone:  (228) 679-1130
                                              Telecopier:  (228) 679-1131
                                              Email:  heldm@phelps.com

                                              **ATTORNEYS FOR MUNICIPAL**
                                              **DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I, W. BRETT HARVEY, do hereby certify that I have this date electronically filed the

foregoing *MEMORANDUM* with the Clerk of the Court via ECF, which forwarded notice of the

same via email to the following counsel:

Bobby Moak, Esq.
P.O. Box 242
Bogue Chitto, MS 39620
Telephone: 601-734-2566
Facsimile: 601-734-2563
bmoak@locnet.net

***ATTORNEY FOR PLAINTIFF***

THIS, the 12th day of August, 2011.

*/s/W. Brett Harvey*
W. BRETT HARVEY